IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-60-RJ

CRYSTAL LYNN WILLIAMS,            )
                                  )
            Plaintiff/Claimant,   )
                                  )
                                  )
                                  )
      v.                          )      O R D E R
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social Security,  )
                                  )
            Defendant.            )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-27, DE-35] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Crystal Lynn Williams ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and this matter is remanded to the Commissioner for further proceedings consistent with this order.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on December 29, 2011, alleging disability beginning February 1, 2006. (R. 14, 205-12). Her claim was denied initially and upon reconsideration. (R. 14, 70-125). A hearing before the Administrative Law Judge

("ALJ") was held on June 13, 2013, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 28-69). At the hearing, Claimant amended her alleged onset date to December 1, 2011. (R. 14, 32-33). On August 9, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 14-27). On December 9, 2014, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence

and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges that the ALJ failed to properly weigh the opinion evidence and

3

failed to reconcile differences between the limitations in the hypothetical to the VE and the light-work jobs as described in the Dictionary of Occupational Titles ("DOT") that the ALJ found Claimant could perform. Pl.'s Mem. [DE-28] at 4-20.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since December 1, 2011, the amended alleged onset date. (R. 16). Next, the ALJ determined Claimant had the following severe impairments: degenerative arthritis of the knees, lumbar disc disease with radiculopathy, morbid obesity, diabetes mellitus, asthma, bipolar II disorder, attention deficit hyperactivity disorder, history of alcohol abuse with cravings, and sleep fragmentation. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in activities of daily living and concentration, persistence and pace, moderate restrictions in social functioning, and no episodes of decompensation of an extended duration. (R. 18). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a reduced range of light work[1] with the ability to lift/carry 10 pounds frequently,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there
(continued...)

4

20 pounds occasionally; sit, stand, or walk up to six hours (in any combination) in an eight-hour workday with the need for a sit/stand option, but no more than two position changes in an hour; occasional kneeling, balancing, or climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; no crawling; occasional interaction with co-workers, supervisors, and the general public; occasional exposure to atmospheric irritations; and limited to simple, routine, repetitive, tasks consistent with unskilled work. (R. 18-21). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 19). At step four, the ALJ concluded Claimant is unable to perform any past relevant work. (R. 21). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 22).

**B. Claimant's Testimony at the Administrative Hearing**

At the time of the administrative hearing, Claimant was 29 years old and living with her two-year-old son. (R. 34, 56-57). Claimant has two other children, ages seven and eight, who live with Claimant's father. (R. 56-57). Claimant completed the twelfth grade, obtained a certified nursing assistant ("CNA") certificate in 2003, and began working as a CNA in 2004. (R. 34-35, 37-40). After she stopped working to have her child in 2010, she subsequently lost her license because the supervising registered nurse ("RN") would not sign off on her renewal when she attempted to return to work. (R. 34-35). Claimant explained that there is a requirement to work at least eight hours with the RN's company, which she did, but the RN still would not sign off. (R. 35). While in high school Claimant worked as a cashier at a grocery store and later worked in a fast-food restaurant as a

---

[1](...continued)
are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

cashier, packer, and cook. (R. 35-36). Claimant also worked for approximately two months as a cashier at a convenience store, but fell at work due to arthritis in her knees and was told she could not return until she "had it fixed." (R. 36-37). Claimant worked as a bus driver for less than a year during 2008 and 2009, mostly driving the morning shift, and worked as a packer at a factory for less than one month. (R. 40-41). At the time of the administrative hearing, Claimant had been working part time for two months driving railroad crew members. (R. 42-43). After driving for about 30 minutes, Claimant must stop and stretch on the side of the road due to her back and arthritis. (R. 43-44).

Claimant is obese and suffers from asthma, arthritis, low-back pain, and bi-polar disorder. (R. 44). She was also diagnosed with attention deficit hyperactivity disorder when she was younger, but is not certain if she still has it and is now better able to focus. (R. 45). Claimant sees a therapist and is taking Fluoxetine and Diazepam for her bi-polar disorder. (R. 44). She experiences mood changes and anger, typically triggered by arguments with her family, but the medication is helpful and she had not had an episode in some time. (R. 45-47). Claimant experiences sharp, shooting pain in her back that starts on the right, moves to the left, and shoots down her right leg. (R. 48, 59). Her weight exacerbates her back pain and her doctor has recommended weight loss. *Id.* Claimant has tried different diet pills and exercise, but is limited in her ability to exercise due to her back and knee pain and Medicaid would not cover weight-loss surgery, which she cannot otherwise afford. (R. 48-49, 51-52). Claimant's asthma "acts up" most every day and she uses two inhalers, one of which is a rescue inhaler and the other she uses twice daily. (R. 50). Claimant experiences knee pain due to arthritis and has no cartilage between her knee and kneecap, but knee replacement has not been recommended due to her weight. (R. 51). Walking, sitting, or standing for long periods of time and

6

lifting her child aggravates her back and knee pain, and she can stand for 10 to 15 minutes before having to sit. (R. 60-61). She takes pain medication and uses a heating pad for relief, but some of the medications make her dizzy and they do not completely resolve her pain. (R. 60-62). At times she experiences swelling in her ankles. (R. 54). Claimant utilizes a cane that was prescribed by her doctor Ann Lewis approximately two and a half weeks prior to the hearing. (R. 58).

Claimant does not believe she could return to CNA work due to the lifting requirements, because she has difficulty lifting her 38-pound child or even her 18-pound niece. (R. 54-56). Claimant could not do a desk job, because she cannot sit for long periods of time due to back pain. (R. 54-55). Claimant can do some chores, such as using a Swiffer on the floors and placing clothes in the washing machine, but someone else has to remove the clothes and hang them on the line to dry. (R. 56). She mostly cooks microwavable food, because standing over the stove to cook causes her pain. (R. 61). Claimant is able to care for her personal needs and drive. *Id.* She has difficulty falling asleep and wakes frequently throughout the night. *Id.* On a typical day, Claimant showers, gets her child ready and takes him to daycare, rides with a friend to do errands such as paying bills or grocery shopping, and waits to see if she will get called in to work. (R. 61-62).

## C. Vocational Expert's Testimony at the Administrative Hearing

Nancy Hayward testified as a VE at the administrative hearing. (R. 62-68). After the VE's testimony regarding Claimant's past work experience (R. 62-64), the ALJ asked the VE to assume a hypothetical individual of the same age, education, and prior work experience as Claimant, limited to light work—lifting up to 10 pounds frequently, 20 pounds occasionally, sitting, standing, and/or walking up to six hours in any combination to complete an eight hour day—with a sit/stand option, meaning the ability to alternate positions no more than two times in any hour but remaining on task;

7

limited to occasional kneeling, balancing, or climbing ramps and stairs; no crawling or climbing ladders, ropes, and scaffolds; only occasional interaction with co-workers, supervisors, and the general public; and occasional exposure to atmospheric irritants due to her asthma. (R. 64). The VE indicated the hypothetical individual could not perform any of Claimant's past relevant work, but could perform the jobs of inspector and hand packager, DOT code 559.687-074, light exertion, unskilled, with an SVP of 2; small products assembler, DOT code 706.684-022, light exertion, unskilled, with an SVP of 2; and basket filler, DOT code 529.687-010, light exertion, unskilled, with an SVP of 1. (R. 64-66). In response to questioning by the ALJ, the VE opined that if the individual is off task more than 10 percent of the day due to breaks it would preclude competitive work. (R. 66). In response to questioning by Claimant's attorney, the VE opined that if the individual is limited to sitting for a total of four hours and walking for a total of two hours, required six to eight 10 to 20 minute breaks in an eight-hour day, or would miss four days of work a month it would preclude full-time work. (R. 68).

## V. DISCUSSION

### A. The Opinion Evidence

Claimant contends the ALJ failed to explain the weight given to the medical opinions or to properly consider them in the listing and RFC analysis. Pl.'s Mem. [DE-28] at 10-15. Specifically, Claimant argues that the ALJ failed to offer an explanation as to why she rejected the opinions of a state agency physician, Dr. Kuncha, and Claimant's treating nurse practitioner, Ann Lewis, that Claimant was limited to sedentary work in favor of another state agency physician's opinion that Claimant could perform light work. *Id.* at 11-12. Defendant, in response, contends that the ALJ properly considered and explained the weight afforded the medical opinions. Def.'s Mem. [DE-36]

8

at 14-18.

The regulations require the ALJ to consider all evidence in the record when making a disability determination. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). More weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § § 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

Further, according to the regulations, a nurse practitioner is not considered an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Even so, "evidence from other sources" may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d); *see also* S.S.R. 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)

(explaining that opinions from "other [medical] sources . . . may provide insight into the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to function"). As other medical sources "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians," their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 WL 2329939, at *3.

In this case, the ALJ's assessment of the medical opinion evidence is insufficient for the court to conduct a meaningful review and, thus, remand is required. *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). Claimant's primary care provider is Ann Lewis, a nurse practitioner, who has treated Claimant for at least seven years.[2] (R. 326-73, 408-30). On March 8, 2012, Lewis completed a Physical Impairment Questionnaire indicating that due to Claimant's chronic back pain, obesity, and asthma she experiences constant lower back pain, radiculopathy on the right, occasional paresthesias of the right leg, and shortness of breath and wheezing. (R. 318). Lewis opined that as a result of these impairments Claimant would require in excess of the typical breaks allowed in a normal workday, could sit no more than four hours and stand or walk no more than two hours in a normal workday, could lift less than 10 pounds frequently and 10 pounds occasionally, and would likely miss more than four days of work per month. (R. 318-19). Lewis also suggested Claimant's prognosis was good with weight loss. (R. 318). The ALJ summarized Lewis's opinion and evaluated it as follows: "The opinion of Ann A. Lewis, nurse practitioner, and contained in Exhibit 4F was also considered and given some weight; however, this opinion is not from a doctor and

---

[2] The medical records documenting Lewis's treatment of Claimant date back to 2006, but Lewis indicated Claimant had been a patient at Sampson Medical Clinic since 2002. (R. 318).

10

therefore, is only given some weight." (R. 20-21). It is unclear from this cursory analysis whether the ALJ considered the appropriate factors, such as length of treatment relationship, supportability, and consistency, in evaluating Lewis's opinion. *See Griffin v. Colvin*, No. 7:12-CV-259-D, 2014 WL 715429, at *5 (E.D.N.C. Feb. 24, 2014) (unpublished) (adopting magistrate judge's recommendation to remand case to the Commissioner where the record "does not reflect whether the ALJ considered the appropriate factors in determining the weight to be accorded the opinions provided by [a nurse practitioner and physician's assistant]."); S.S.R. 06-03p, 2006 WL 2329939, at *4-5.

The failure to consider the relevant factors was error that potentially prejudiced Claimant in the RFC analysis. For example, although the ALJ is not required to discuss every piece of evidence, there is no discussion of Lewis's treatment notes in the ALJ's decision, which is significant given that she was Claimant's primary care provider and adds further uncertainty as to whether the ALJ considered the factors of consistency and supportability in evaluating Lewis's opinion. *See Makurat v. Astrue*, No. 5:11-CV-345-D, 2012 WL 3486432, at *7, n.3 (E.D.N.C. July 19, 2012) (unpublished) (noting that "[a]lthough a nurse practitioner is not an 'acceptable medical source' under the Regulations, as is a physician, the same factors used to evaluate the opinions of physicians can appropriately be used to evaluate the opinions of a nurse practitioner.") (citations omitted). Likewise, both parties in the briefing noted Claimant's testimony at the June 13, 2013 administrative hearing that Claimant, due to her difficulty walking, used a cane prescribed by Lewis (R. 58), evidence that is arguably consistent with the limitation to sedentary work suggested by Lewis. Pl.'s Mem. [DE-28] at 4; Def.'s Mem. [DE-36] at 3. However, the ALJ failed to address this potentially

11

significant evidence in the decision.[3]  Finally, one of the state agency consultants, Dr. Kuncha, opined that Claimant was limited to sedentary work, consistent with Lewis's opinion. (R. 77-81, 90-94). The ALJ noted Dr. Kuncha's opinion, along with the opinion of another state agency consultant who determined Claimant was capable of light work, but curiously found them both to be "reasonable based on the evidence at the time" and afforded them both "some weight" without any explanation as to the inconsistencies. (R. 20-21). While the ALJ is correct that Lewis is not a doctor and thus not an acceptable medical source, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." S.S.R. 06-03p, 2006 WL 2329939, at *5. It is unclear from the ALJ's decision whether she evaluated Lewis's opinion in accordance with the correct legal standards. Accordingly, the matter must be remanded for the ALJ to consider in accordance with S.S.R. 06-03p and explain the weight afforded.

## B.     The Sit/Stand Option

Claimant contends the ALJ failed to reconcile an apparent conflict between the hypothetical limitation of a sit/stand option and the DOT descriptions of the jobs listed by the VE, which do not include an allowance for a sit/stand option. Pl.'s Mem. [DE-28] at 13.  In response, Defendant concedes that the ALJ erred in failing to inquire of the VE as to whether her testimony was consistent with the DOT, but argues the error is harmless because the DOT is silent as to a sit/stand

---

[3] There is no evidence in the treatment records regarding Lewis prescribing a cane. However, the last evidence in the record of Lewis's treatment of Claimant, which appears to be in February 2013, predates the hearing by four months and Claimant testified the cane was prescribed approximately two weeks prior to the hearing. (R. 30, 58, 408). Therefore, to the extent necessary to assess Claimant's testimony in this regard, the ALJ may need to further develop the record.

option and, thus, the testimony was not in conflict with the DOT. Def.'s Mem. [DE-36] at 19-20.

Pursuant to Ruling 00-4p, the ALJ must "inquire, on the record, . . . whether the vocational expert's testimony conflict[s] with the [DOT], and [the Ruling] also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the [DOT]." *Pearson v. Colvin*, 810 F.3d 204, 207-08 (4th Cir. 2015) (internal quotation marks omitted) (citing S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). Here, there is no dispute the ALJ erred in failing to make the requisite inquiry. However, because the DOT is silent as to a sit/stand option, there is no conflict between the VE's testimony and the DOT and the error is therefore harmless under these facts. *See Caldwell v. Colvin*, No. 5:14-CV-77-FL, 2015 WL 307071, at *5 (E.D.N.C. Jan. 21, 2015) (unpublished) (finding failure to affirmatively ask about possible conflicts was harmless error where the DOT is silent as to a sit/stand option) (citing *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (holding that no conflict appeared to exist and therefore, the ALJ's failure to ask the VE about the possible conflicts was harmless); *Wellington v. Astrue*, No. 12 Civ. 3523(KBF), 2013 WL 1944472, at *4 (S.D.N.Y. May 9, 2013) (unpublished) (finding harmless any violation of SSR 00-4p as there was no actual conflict between the VE and the DOT regarding the sit-stand option); *Lusk v. Astrue*, No. 1:11-CV-00196-MR, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013) (unpublished) (finding "no conflict existed between the VE's testimony and the DOT" where "[t]he DOT is silent as to the availability of a sit/stand option" and "as such, it was entirely proper for the ALJ to obtain and consider VE testimony in order to supplement the DOT job descriptions."); *Thompson v. Astrue*, No. 8:09-CV-1968, 2010 WL 3878729, at *5 (D.S.C. June 16, 2010) (finding no conflict when the DOT did not address the sit-stand option, hence no duty of explanation arose, and the ALJ's failure to inquire was harmless error); *Corbett v. Astrue*, No.

13

1:04CV241, 2006 WL 5527015, at *62 (N.D.W.Va. Mar. 24, 2006) (finding that "the lack of a sit-stand option in the DOT does not conflict with the VE's testimony that certain jobs would be available with a sit-stand option in the national economy")). Accordingly, this argument is without merit.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-27] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-35] is DENIED, and the case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this order.

SO ORDERED, this the 30th day of March 2016.

Robert B. Jones, Jr.
United States Magistrate Judge